498 A.2d 970

**COMMONWEALTH of Pennsylvania**

v.

**David H. MOORE, Appellant.**

Superior Court of Pennsylvania.

Submitted June 18, 1985.

Filed Sept. 27, 1985.

John H. Corbett, Jr., Public Defender, Pittsburgh, for appellant.

Robert L. Eberhardt, Deputy District Attorney, Pittsburgh, for Commonwealth, appellee.

Before ROWLEY, OLSZEWSKI and DEL SOLE, JJ.

OLSZEWSKI, Judge:

This is an appeal from the judgment of sentence of the Court of Common Pleas of Allegheny County, imposing a term of life imprisonment upon appellant for the second-degree murder of Robert White. The facts are not in dispute: On the evening of October 29, 1983, appellant approached White from behind and grabbed him around the neck with his right arm. N.T. at 103. After struggling with appellant, Mr. White, a 74-year-old man, fell to the ground. He never regained consciousness and died five days later. Appellant waived his right to a jury trial, Record at 4, and was found guilty of murder in the second degree on June 29, 1984.[1] N.T. at 117. Appellant raises only one issue: whether the lower court erred in finding sufficient evidence on the issue of legal causation to support a verdict of guilty of second-degree murder. Appellee argues that our decision in *Commonwealth v. Cotton*, 338 Pa.Super. 20, 487 A.2d 830 (1984), is controlling authority for dismissal of the present appeal. We agree and affirm the judgment of the lower court.

■ Appellant argues that *Commonwealth v. Embry*, 441 Pa. 183, 272 A.2d 178 (1971), should apply to his case. In *Embry, supra,* a 70-year-old woman with a long history of coronary artery disease and prior heart attacks became the victim of a purse-snatching and died of a heart attack. The medical expert who performed the autopsy testified to a reasonable degree of medical certainty that the victim's struggle with the assailant produced the stress which caused the heart attack, but stated that he was not con-

1. 18 Pa.C.S. Sec. 2502 (Purdon's 1983).

vinced of this beyond a reasonable doubt. The Supreme Court held that "when only one witness is presented by the Commonwealth to establish causation and the witness cannot do so beyond a reasonable doubt, a necessary element of that crime is missing." *Id.*, 441 Pa. at 186, 272 A.2d at 179. This decision was based on the holding in *Commonwealth v. Radford*, 428 Pa. 279, 236 A.2d 802 (1968). Two cases decided by the Supreme Court subsequent to *Embry, supra*, indicate further development of the law of causation. *Commonwealth v. Webb*, 449 Pa. 490, 296 A.2d 734 (1972); *Commonwealth v. Floyd*, 499 Pa. 316, 453 A.2d 326 (1982). In a footnote to our holding in *Cotton, supra*, we discussed this development and made the following observation:

> (in) *Commonwealth v. Floyd*, 499 Pa. 316, 453 A.2d 326 (1982), our Supreme Court concluded that the opinion of a medical expert expressed in terms of a reasonable degree of medical certainty was adequate evidence in the record of causation for the finder of fact to conclude beyond a reasonable doubt that the cause of death was a crimina act. Importantly, *Floyd* can be read as having overruled *Embry*.

*Cotton, supra*, 338 Pa.Superior Ct. at 25 n. 2, 487 A.2d at 833 n. 2. Obviously, *Embry, supra*, is overruled by *Floyd, supra*, to the extent that it required the relevant medical expert to testify as to causation "beyond a reasonable doubt." It remains authoritative on the principle that the Commonwealth must present more than an opinion of a medical expert to establish causation in a homicide case.

In the present case, the Commonwealth presented evidence in the testimony of Detective Robert Lazzaro of the Allegheny County Police Department. Detective Lazzaro testified that on December 8, 1983, appellant admitted that on the date in question, he had grabbed the victim around the neck in an attempt to rob him. N.T. at 60. Appellant makes no attempt of record to challenge, suppress or prevent the introduction of this statement, and in fact corroborates this statement by his own direct testimo-

ny at trial. N.T. at 103. The Commonwealth also presented Dr. Karl E. Williams, an associate pathologist with the Allegheny County Coroner, who performed the autopsy on the victim. Dr. Williams testified that the victim had a history of heart attack and a severe degree of coronary artery disease. N.T. at 92. He also testified that originally, the manner of death was considered "undetermined." N.T. at 92. This was changed to "homicide" on the basis of appellant's statement to Detective Lazarro. *Id.* Dr. Williams was "not able to say one hundred percent that (the trauma to the victim's neck) is definitely associated with compression of the neck or one hundred percent that it is definitely associated with CPR (cardiopulmonary resuscitation)." N.T. at 87. But he did testify "with a reasonable degree of medical certainty"[2] that the compression of the neck as presented in appellant's inculpatory statement "is the precipitating event that . . . ultimately precipitated (Mr. White's) death." N.T. at 77. With the testimony of the medical expert added to that of Detective Lazzaro, the Commonwealth satisfied its burden to present sufficient evidence of the cause of death. By his own failure to challenge his inculpatory statement contained in Detective Lazzaro's testimony, his choosing to testify to these same facts, and his failure to present any rebuttal evidence as to the opinion of the Commonwealth's expert witness, appellant adds significantly to the weight of this already sufficient evidence against him.

We note with respect the dissenting opinion in *Cotton, supra,* of our learned colleague, Judge Vincent A. Cirillo, and offer that even under the analysis set forth in that dissent, appellant's conviction would have to stand. See *Cotton, supra,* 338 Pa.Superior Ct. at 30, 487 A.2d 835, Cirillo, J., concurring and dissenting.

Accordingly, judgment of sentence is affirmed.

2. Although Dr. Williams did not specifically state that his opinion was rendered with a reasonable degree of medical certainty, his answer was given to the following question:

Q: Now, can you testify to a reasonable degree of medical certainty what caused the trauma to the neck area of Robert White? N.T. at 77.