J-A14041-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| QUADIR SHAHIDD TAYLOR | : | |
| | : | |
| Appellant | : | No. 1712 EDA 2017 |

Appeal from the Judgment of Sentence January 27, 2017
in the Court of Common Pleas of Northampton County
Criminal Division at No.:  CP-48-CR-0000587-2016

BEFORE:   GANTMAN, P.J., SHOGAN, J., and PLATT*, J.

MEMORANDUM BY PLATT, J.:                    **FILED OCTOBER 15, 2018**

Appellant, Quadir Shahidd Taylor, appeals from the judgment of sentence imposed following his jury conviction of second-degree murder and related crimes.  Appellant chiefly challenges the sufficiency and the weight of the evidence for the murder conviction.  Specifically, he maintains that he was not the "legal cause" of the death of the victim, who he concedes suffered a heart attack on the night of the home invasion robbery and died two months later.  Appellant blames the victim's pre-existing conditions.  We affirm.

The underlying facts of the case are not in substantial dispute.

During the early morning hours of January 15, 2012, Appellant and his cohort, Rogel (also referred to as Roger) Suero, surreptitiously entered the residence of Carrie Smith at 2466 Hillside Avenue in Wilson Borough,

_____
*   Retired Senior Judge assigned to the Superior Court.

Northampton County, Pennsylvania. (**See** N.T. Trial, 1/10/17 at 107-14, 123-29). At the time, Ms. Smith was seventy–six years old and frail.

Rebecca Johnson is the granddaughter of Carrie Smith. Her brother, Jimmy Johnson, lived in the home with his grandmother. Rebecca Johnson knew that her grandmother kept a large amount of cash, bonds, jewelry and other valuables in a safe in her home. At trial, Rebecca Johnson testified that she conceived the plan for a home invasion robbery of her grandmother, and having the robbers gain entry by use of her brother's key. (**See** N.T. Trial, 1/11/17, at 332-33; 352).

On the night of the incident, Appellant and the other robber entered, woke Ms. Smith, smothered her with a pillow until she could not breathe, grabbed her by the hair and pushed her to another room containing the floor safe, which they demanded that she open. When she had trouble entering the combination, they threatened to "blow her brains out." (N.T. Trial, 1/10/17 at 128). The thieves made off with thirty thousand dollars in cash, plus other valuables. It is undisputed that, as a direct result of the robbery, Ms. Smith suffered a heart attack and was hospitalized from January 15, 2012 until January 21, 2012. (**See** N.T. Trial, 1/11/17, at 218-21, 225).

It bears noting that Ms. Smith had a variety of medical conditions, including hypertension (high blood pressure), and coronary artery disease. Although she had not received a formal diagnosis, she was also suspected of having idiopathic pulmonary fibrosis, a scarring of the lung tissue of unknown

origin, which progressively interferes with breathing, and is incurable. (*See id.* at 359-60).

After Ms. Smith was released from the hospital, her health continued to deteriorate, and she was hospitalized twice more before she died on March 16, 2012, two months after the home invasion robbery. (*See id.* at 234, 307).

At trial, Appellant did not challenge the Commonwealth's evidence related to his involvement in the robbery, or that Ms. Smith suffered a heart attack as a result of the incident. Instead, he challenged the conclusions of the Commonwealth's medical experts that the events of January 15, 2012 caused Ms. Smith's death.

The jury found Appellant guilty of murder of the second degree, burglary, robbery, criminal trespass, theft, terroristic threats, recklessly endangering another person (REAP), and conspiracy to commit burglary and robbery. On January 27, 2017, the trial court sentenced Appellant to a term of life imprisonment without parole, with additional consecutive sentences on the convictions of conspiracy to commit robbery, criminal trespass, and REAP.

Appellant filed a post-sentence motion, which the trial court denied with an opinion in support of its order. This timely appeal followed. Appellant also filed a timely concise statement of errors complained of on appeal. The trial court filed its opinion on July 6, 2017, referencing in part its May 12, 2017 opinion on the post sentence motions. *See* Pa.R.A.P. 1925.

Appellant presents five questions for our review:

1. Was there sufficient evidence to support the jury's verdict of guilty of second degree murder where the cause of death was not obvious and the Commonwealth's medical experts could not testify that [Appellant's] acts caused the victim's death beyond a reasonable doubt?

2. Was the second degree murder verdict against the weight of the evidence?

3. Did the [t]rial [c]ourt err when it denied [Appellant's] request for a proposed jury instruction which highlighted the difference between the definition of homicide used by the forensic pathologists and definition of homicide as set forth by the law?

4. Did the [t]rial [c]ourt err when it sustained the Commonwealth's objection to defense counsel's question posed to Coroner Lysek regarding the possibility that the 911 operator's handling of the emergency call could have caused the victim stress?

5. Did the [t]rial [c]ourt err when it denied [Appellant's] request for a hearing on the issue of prosecutorial misconduct and [Appellant's] request for an extension of time to file a supplemental brief related thereto?

(Appellant's Brief, at 5).[1]

Appellant first challenges the sufficiency of the evidence for second-

degree murder.  Our standard of review is well-settled.

In evaluating a challenge to the sufficiency of the evidence, we must determine whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, together with all reasonable inferences therefrom, the trier of fact could have found that each and every element of the crimes charged was established beyond a reasonable doubt.  We may not weigh

---

[1] Appellant's brief, which is longer than thirty pages, fails to include a certification that it complies with the prescribed word count limit.  **See** Pa.R.A.P. 2135(a)(1).

the evidence and substitute our judgment for the fact-finder.  To sustain a conviction, however, the facts and circumstances which the Commonwealth must prove must be such that every essential element of the crime is established beyond a reasonable doubt

*Commonwealth v. Bullock*, 948 A.2d 818, 823 (Pa. Super. 2008), *appeal denied*, 968 A.2d 1280 (Pa. 2009) (internal quotation marks and citations omitted).

"This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." *Commonwealth v. Sanders*, 627 A.2d 183, 185 (Pa. Super. 1993), *appeal denied*, 634 A.2d 220 (Pa. 1993) (citation omitted).  Although a conviction must be based on "more than mere suspicion or conjecture, the Commonwealth need not establish guilt to a mathematical certainty." *Commonwealth v. Badman*, 580 A.2d 1367, 1372 (Pa. Super. 1990) (citation omitted).

> In undertaking this inquiry, we bear in mind that: the Commonwealth may sustain its burden by means of wholly circumstantial evidence; the entire trial record should be evaluated and all evidence received considered, whether or not the trial court's rulings thereon were correct; and the trier of fact, while passing upon the credibility of witnesses and the weight of the evidence, is free to believe all, part, or none of the evidence.

*Commonwealth v. Laird*, 988 A.2d 618, 625 (Pa. 2010), *cert. denied*, 562 U.S. 1069 (2010) (citation omitted).

Preliminarily, here, Appellant's sufficiency claim is waived because his Rule 1925(b) statement of errors is generic boilerplate, giving no indication of the specific nature of the purported trial court error.  Where an appellant files

a Rule 1925(b) statement that raises a general issue but does not enumerate his specific reasons for appealing that issue, the claim is waived.[2] ***See Commonwealth v. Lemon***, 804 A.2d 34, 39 (Pa. Super. 2002) ("Appellant filed a Pa.R.A.P. 1925(b) statement, which raised generally a sentencing issue. However, this statement was too general and vague to apprise the trial court of the precise issue to be raised. The only way for the trial court to have addressed the issue, therefore, was to essentially act as counsel for Appellant and try to anticipate, guess, or predict what Appellant wanted to appeal. Therefore, we find all of Appellant's sentencing claims to be waived").

It is also well settled that when the trial court orders an appellant to submit a 1925(b) statement, the statement must indicate, with **specificity,** the error to be addressed on appeal. This rule guards against vague statements which require the court to guess which issues are being raised on appeal. Such vague and nonspecific 1925(b) statements do not provide enough for the court to conduct a meaningful review of the issues, and are the functional equivalent of no 1925(b) statement at all. Furthermore, even if by chance the trial court correctly guesses the issues an appellant raises on appeal and writes an opinion pursuant to that supposition, the issues are **still waived**. ***See id.*** Accordingly, Appellant's sufficiency claim is waived.

---

[2] Counsel for Appellant also erred by failing to include a copy of the statement of errors in the brief. ***See*** Pa.R.A.P. 2111(a)(11).

Moreover, Appellant's issue would not merit relief. Appellant maintains that "the Commonwealth's evidence as to causation was insufficient as a matter of law." (Appellant's Brief, at 12). Nevertheless, Appellant concedes, correctly, that the well-settled law of the Commonwealth is that the testimony of a medical expert, rendering an opinion to a reasonable degree of medical certainty (and not beyond a reasonable doubt), is sufficient, together with the other evidence in a case, to establish the cause of death. (**See id.** at 12); **see also Commonwealth v. Cotton**, 487 A.2d 830, 833 (Pa. Super. 1984) (medical opinion with "reasonable medical certainty" that stress of assault and robbery triggered heart attack in victim, who already suffered from heart disease, was sufficient evidence to establish second degree murder of victim). In reaching this decision, this Court observed:

> [In] **Commonwealth v. Floyd**, 499 Pa. 316, 453 A.2d 326 (1982), our Supreme Court concluded that the opinion of a medical examiner expressed in terms of a reasonable degree of medical certainty was adequate evidence in the record of causation for the finder of fact to conclude beyond a reasonable doubt that the cause of death was a criminal act. Importantly, **Floyd** can be read as having overruled **Embry**.[3]

**Cotton, supra,** at 833, n.2.

---

[3] **Commonwealth v. Embry**, 272 A.2d 178, 179 (Pa. 1971) had held that medical testimony on causation of death to a "reasonable degree of medical certainty" was insufficient to establish an element of the crime of murder beyond a reasonable doubt.

In **Commonwealth v. Moore**, 498 A.2d 970 (Pa. Super. 1985), this Court concluded:

> Obviously, **Embry, supra,** is overruled by **Floyd, supra,** to the extent that it required the relevant medical expert to testify as to causation "beyond a reasonable doubt." It remains authoritative on the principle that the Commonwealth must present more than an opinion of a medical expert to establish causation in a homicide case.

**Moore**, **supra** at 971.

Appellant's analysis is contrary to controlling authority and would merit no relief. Accordingly, Appellant's first claim is both waived and without merit.

In Appellant's second claim, he challenges the weight of the evidence. (**See** Appellant's Brief, at 5). This argument is at root a re-working of the causation insufficiency claim, arguing again that Appellant's conviction is deficient because Ms. Smith died of pre-existing causes. (**See id.** at 35-48). We disagree.

> A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

- 8 -

*Commonwealth v. Widmer*, 744 A.2d 745, 751–52 (Pa. 2000) (citations, internal quotation marks, and footnote omitted). "One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice." *Id.* at 753 (citation omitted).

Here, Appellant's challenge to the weight of the evidence re-presents the reasonable doubt standard argument from his insufficiency claim and reiterates the pre-existing illness arguments. Appellant compares the causation testimony of the Commonwealth's experts with that of his own experts. In effect, Appellant urges this Court to re-weigh the evidence.

We decline to do so. It was the province of the jury sitting as factfinder to weigh the evidence, including expert testimony, while passing on the credibility of witnesses and to believe all, part, or none of it. *See Laird*, *supra* at 625. The trial court, in reviewing the weight claim, found nothing in the jury's verdict to shock the conscience of the court. (*See* Trial Ct. Op., at 11). On independent review, neither do we. Appellant's second claim fails.

In his third claim, Appellant challenges the denial of a proposed jury instruction. (*See* Appellant's Brief, at 5). Appellant maintains the jury was misled by the term "homicide." (*See id.* at 49). Counsel for Appellant proposed a jury instruction which purported to clarify the distinction between the term "homicide" as used in the law versus "homicide" as used by the medical witnesses.

Counsel candidly concedes that he erred by failing to make a timely, specific objection to the denial of his proposed instruction. (**See id.** at 50); **see also** Pa.R.Crim.P. 603(B). Accordingly, this claim is waived.

Moreover, it would not merit relief.

> [O]ur standard of review when considering the denial of jury instructions is one of deference—an appellate court will reverse a court's decision only when it abused its discretion or committed an error of law.
>
> > When evaluating jury instructions, the charge must be read as a whole to determine whether it was fair or prejudicial. The trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration.

**Commonwealth v. Baker**, 24 A.3d 1006, 1022 (Pa. Super. 2011), *affirmed*, 78 A.3d 1044 (Pa. 2013) (citations and quotation marks omitted). "A new trial is required on account of an erroneous jury instruction only if the instruction under review contained fundamental error, misled, or confused the jury." **Commonwealth v. Fletcher**, 986 A.2d 759, 792 (Pa. 2009) (citations and internal quotation marks omitted).

Here, Appellant fails to identify, or provide pertinent controlling authority, in support of his generic claim that the trial court's instructions taken as a whole contained error, or confused the jury. In fact, the entire thrust of Appellant's argument is rather vague. Appellant cites a requested jury charge adopted from **Commonwealth v. Jacobs**, 639 A.2d 786 (Pa. 1994). The question at issue in **Jacobs** was whether the stabbing death of

appellant's girlfriend, and the drowning death of their infant child were self-inflicted (suicide), accidental, or "homicide," *i.e.*, not self-inflicted or accidental.

The relevance of that issue to the claims in this appeal is obscure. In any event, Appellant fails to develop an argument that the denial was an abuse of discretion or an error of law. Even if the issue were not waived, we would decline to disturb the discretion of the trial court. Appellant's third claims is waived and would not merit relief.

In his fourth claim, Appellant assigns error to the trial court's sustaining of an objection from the Commonwealth to a question by defense counsel put to the coroner as to whether the stress experienced by the victim, Ms. Smith, may have been caused by her interaction with the 911 call operator. (*See* Appellant's Brief, at 5). Counsel for Appellant argues on appeal that the ruling deprived him of the opportunity to explore issues relating to intervening stress to the victim. (*See id.* at 53). He maintains that the trial court's ruling prevented a fair trial. (*See id.* at 54). We disagree.

> The standard of review for a trial court's evidentiary rulings is narrow. The admissibility of evidence is solely within the discretion of the trial court and will be reversed only if the trial court has abused its discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record.

*Commonwealth v. Mendez*, 74 A.3d 256, 260 (Pa. Super. 2013), *appeal denied*, 87 A.3d 319 (Pa. 2014) (citation omitted).

On appeal, the trial court reasons that it properly sustained the Commonwealth's objection because the coroner had no specialized training in post-traumatic stress, and therefore, he lacked the qualifications necessary to render an expert opinion. (*See* Trial Ct. Op., at 15).

Appellant fails to present pertinent authority in support of his assertion that post-traumatic stress did not require specialized knowledge. (*See* Appellant's Brief, at 54). Moreover, Appellant does not assert that the trial court's ruling was the product of partiality, prejudice, bias or ill-will. We discern no basis to disturb the discretion of the trial court. Appellant's fourth claim fails.

In his fifth and final claim, Appellant asserts trial court error in the denial of his request for a hearing on his contention of prosecutorial misconduct, and the denial of an extension to file a supplemental brief in support. (*See id.* at 5). We disagree.

Appellant's argument is rather obscure and verges on the opaque. (*See id.* at 55-57). Without providing any specific facts, he posits that a witness (not otherwise identified) who had testified in a prior related trial changed his testimony in this trial. Counsel suggests, again without specific facts, that the prosecutor led defense counsel to believe that the testimony would be substantially the same. Counsel does concede that on what he now believes to have been limited and misleading information, he withdrew a prior objection

to the testimony, and later sought permission to reinstate the objection. The trial court declined.

Counsel acknowledges that an assessment of the trial court's refusal is subject to an abuse of discretion standard, but maintains that review is nevertheless proper because "defendant faces a lifetime in prison." (***Id.*** at 57).

This claim is simply too vague to enable meaningful review. In any event, Appellant fails to develop an argument for the purported prosecutorial misconduct, and offers no controlling authority in specific support of his claim. Accordingly, we conclude that Appellant's claim is waived as undeveloped and unsupported by reference to pertinent authority. ***See*** Pa.R.A.P. 2119(a), (b).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/15/18